IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-46-D

| | | |
|---|---|---|
| SHARRON D. HUNTER-RAINEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NORTH CAROLINA STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

On January 25, 2017, Sharron D. Hunter-Rainey ("Hunter-Rainey" or "plaintiff") sued North Carolina State University ("NCSU" or "defendant") alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended. See Compl. [D.E. 1]. Hunter-Rainey (who is an African-American woman) alleges that NCSU did not hire her as Assistant Dean for Professional Development in the Graduate School due to her race. See id. at 1–3. On January 26, 2017, Hunter-Rainey filed an amended complaint [D.E. 3]. On March 13, 2017, NCSU moved to dismiss the amended complaint [D.E. 10] and filed a memorandum in support [D.E. 11]. On April 6, 2017, Hunter-Rainey moved to amend her complaint to add additional claims [D.E. 15]. On December 1, 2017, NCSU moved for summary judgment [D.E. 26] and filed a memorandum in support [D.E. 29]. On January 9, 2018, Hunter-Rainey responded in opposition [D.E. 33]. On January 23, 2018, NCSU replied [D.E. 38]. As explained below, the court grants Hunter-Rainey's motion to amend [D.E. 15], denies NCSU's motion to dismiss [D.E. 10], and grants NCSU's motion for summary judgment [D.E. 26].

I.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the plaintiff and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Likewise, a "mere . . . scintilla of evidence in support of the [nonmoving party's] position [will not suffice]; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252; see Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

Title VII prohibits employers from refusing to hire any individual "because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII violation in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated

2

an employer's adverse employment action. Alternatively, a plaintiff may proceed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

Hunter-Rainey lacks direct evidence of race discrimination. Instead, she proceeds under McDonnell Douglas, which "established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). Under McDonnell Douglas, the plaintiff first must establish a prima facie case of discrimination. See id.; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took adverse employment action "for a legitimate, nondiscriminatory reason." Burdine, 450 U.S. at 254. This burden is one of production, not persuasion. St. Mary's Honor Ctr., 509 U.S. at 509. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285; see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Burdine, 450 U.S. at 256; King v. Rumsfeld, 328 F.3d 145, 151–54 (4th Cir. 2003). A plaintiff can demonstrate pretext by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 603–04 (E.D.N.C. 2006).

In order to establish a prima facie case of failure to hire based on race, Hunter-Rainey must

3

show that: (1) she belongs to a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection the position remained open, or was filled in a manner giving rise to an inference of discrimination. See, e.g., EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001); Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998). Where a plaintiff fails to identify the specific job for which she applied, her qualifications for that job, and the circumstances giving rise to an inference of race discrimination, a plaintiff fails to establish a prima facie case. See Brown, 159 F.3d at 903–04; see also Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005–06 (4th Cir. 1987).

Hunter-Rainey has failed to establish a prima facie case of failure to hire based on race. The record demonstrates that, in order to be fair and transparent in hiring, NCSU only reviews applications submitted through PeopleAdmin, which is NCSU's online job portal. See Justin Lang Aff. [D.E. 28-4] ¶¶ 6, 15; Maureen Grasso Aff. [D.E. 28-3] ¶ 11; Frank Barragan Aff. [D.E. 28-1] ¶ 10; Justin Lang Dep. Tr. [D.E. 28-10] 29. Hunter-Rainey admits that she did not apply to serve as an Assistant Dean through PeopleAdmin. See Pl.'s Dep. Tr. [D.E. 28-9] 26, 29. Rather, on June 13, 2016, Hunter-Rainey tried and failed to submit her application through PeopleAdmin. Id. at 26. Instead of contacting PeopleAdmin's technical support, Hunter-Rainey emailed Dean Maureen Grasso and copied Justin Lang on June 13, 2016, and attached her resume and a cover letter. Hunter-Rainey admits, however, that she "never intended" the email "to be an application." Pl.'s Resp. to Req. for Admiss. # 7 [D.E. 28-11] 3–4; see Pl.'s Dep. at 26. Moreover, Dean Grasso and Justin Lang did not consider the email to be an application. See Grasso Aff. ¶ 11; Lang Aff. ¶ 15. Thus, because Hunter-Rainey did not apply for the Assistant Dean position, Hunter-Rainey fails to establish a prima facie case of race discrimination. Accordingly, the court grants NCSU's motion for summary judgment.

Alternatively, even if Hunter-Rainey established a prima facie case, NCSU has articulated a legitimate non-discriminatory reason for not selecting Hunter-Rainey: she did not submit an application for the position. See Grasso Aff. ¶¶ 8–13; Lang Aff. ¶¶ 13–18; Maureen Grasso Dep. [D.E. 28-8] 16–18. Thus, the court analyzes whether Hunter-Rainey has raised a genuine issue of material fact concerning pretext.

A plaintiff can demonstrate pretext by showing that the alleged non-discriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish, 359 F.3d at 336 (quotation omitted). In analyzing pretext, the court does not sit to decide whether the defendant in fact discriminated against the plaintiff on the basis of race. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the court focuses on whether the plaintiff has raised a genuine issue of material fact as to pretext within the meaning of Reeves and its Fourth Circuit progeny.

Hunter-Rainey has failed to raise a genuine issue of material fact concerning pretext. In support of its motion for summary judgment, NCSU attached copies of the relevant employment and interview documents, deposition testimony, and affidavits concerning the hiring process for the Assistant Dean position. See [D.E. 28-1–28-11]. Even viewing this evidence in the light most favorable to Hunter-Rainey, nothing in the record shows that the decisionmaker (or anyone involved in the process) knew Hunter-Rainey's race. A plaintiff cannot prove intentional race discrimination under Title VII unless the decisionmaker knew the plaintiff was a member of a protected class. See, e.g., Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987); Reid v. Dalco Nonwovens, LLC, 154 F. Supp. 3d 273, 285–86 (W.D.N.C. 2016). Likewise, nothing in the record shows that the decisionmaker (or anyone involved in the process) discriminated against Hunter-Rainey because of

5

her race (or anything else). See Lang Aff. ¶¶ 13–18; Grasso Aff. ¶¶ 8–13; Barragan Aff. ¶¶ 10–15; Lang Dep. at 29. Hunter-Rainey's speculation about pretext is not enough. See, e.g., Holland, 487 F.3d at 216–18; Price v. Thompson, 380 F.3d 209, 215–17 (4th Cir. 2004); Mereish, 359 F.3d at 336–39; Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Furthermore, Hunter-Rainey's perception of her own experience, performance, and skills is not relevant. It is the perception of the decisionmaker that counts. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson, 427 F. Supp. 2d at 607. Thus, Hunter-Rainey's Title VII race-discrimination claim fails.

II.

On April 6, 2017, Hunter-Rainey moved to amend her complaint [D.E. 15] and attached a second amended complaint [D.E. 15-1]. In the second amended complaint, Hunter-Rainey corrected typographical errors and clarified that she was seeking relief for failure-to-hire based on (1) her race under Title VII of the Civil Rights Act of 1964, as amended; (2) her age under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"); and (3) her "disability" under the Americans with Disabilities Act, as amended ("ADA") and the Rehabilitation Act, as amended. See [D. E. 15-1] 1–2. Hunter-Rainey's alleged disability is being a "cancer survivor." Id. at 3.

The court grants Hunter-Rainey's motion to amend, denies NCSU's motion to dismiss, and considers the age discrimination and disability discrimination claims in the second amended complaint.

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees[.]" 42 U.S.C. § 12112. The ADEA prohibits an employer from "fail[ing] or refus[ing]

6

to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Hunter-Rainey has no direct evidence of disability or age discrimination. Instead, she proceeds under the McDonnell Douglas framework. Under that framework, Hunter-Rainey must prove: (1) she was a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection the position remained open, or was filled in a manner giving rise to an inference of discrimination. See, e.g., Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1191 (11th Cir. 2016); Alja-Iz v. U.S. Virgin Islands Dep't of Educ., 626 F. App'x 44, 46 (3d Cir. 2015) (per curiam) (unpublished); McGeshick v. Principi, 357 F.3d 1146, 1149–51 (10th Cir. 2004).

As with Hunter-Rainey's race discrimination claim, Hunter-Rainey did not apply to serve as Assistant Dean. Thus, Hunter-Rainey has failed to establish a prima facie case of either disability discrimination or age discrimination. Alternatively, and assuming without deciding that being a "cancer survivor" qualifies as having a "disability" under the ADA and Rehabilitation Act, NCSU offers a legitimate non-discriminatory reason for not selecting Hunter-Rainey: she did not submit an application for the position. See Grasso Aff. ¶ 11; Lang Aff. ¶¶ 13–15; Grasso Dep. at 16. Thus, the court analyzes whether Hunter-Rainey has raised a genuine issue of material fact concerning pretext.

Hunter-Rainey has failed to raise a genuine issue of material fact concerning pretext. NCSU filed copies of the relevant employment and interview documents, deposition transcripts, and affidavits from the individuals involved in the hiring decision for the Assistant Dean position. All relevant personnel deny knowing that Hunter-Rainey was a cancer survivor or discriminating against

her due to this alleged disability (or anything else). See Lang Aff. ¶¶ 13–18; Grasso Aff. ¶¶ 8–13; Barragan Aff. ¶ 15; Lang Dep. at 29.[1] Similarly, all relevant personnel deny knowing Hunter-Rainey's age or discriminating against her due to her age. Hunter-Rainey's speculation about pretext does not create a genuine issue of material fact concerning disability or age discrimination. See, e.g., Holland, 487 F.3d at 216–18; Price, 380 F.3d at 215–17; Mereish, 359 F.3d at 336–39; Tinsley, 155 F.3d at 444. Thus, Hunter-Rainey's disability discrimination and age discrimination claims fail. See, e.g., Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 517–20 (8th Cir. 2011); Adeyemi v. Dist. of Columbia, 525 F.3d 1222, 1227–29 (D.C. Cir. 2008); Gonzalez-Lord v. Thompson, 58 F. App'x 591, 592–93 (4th Cir. 2003) (per curiam) (unpublished); Holdcraft v. Cty. of Fairfax, Va., 31 F. App'x 97, 98–99 (4th Cir. 2002) (per curiam) (unpublished); Henson v. Liggett Grp., Inc., 61 F.3d 270, 275–77 (4th Cir. 1995).

### III.

In sum, the court GRANTS plaintiff's motion to amend [D.E. 15], DENIES defendant's motion to dismiss [D.E. 10], and GRANTS defendant's motion for summary judgment [D.E. 26]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 28 day of February 2018.

JAMES C. DEVER III
Chief United States District Judge

---

[1] Hunter-Rainey argues that NCSU must have known that she was a cancer survivor because she used to be employed within the University system at a different college, and the decisionmakers at NCSU could have accessed her insurance files and observed increased healthcare costs. See Pl's Opp'n Mot. Summ. J. [D.E. 37] 8. This speculative argument fails to raise a genuine issue of material fact concerning pretext. See, e.g., Anderson, 477 U.S. at 2490–52; Beale, 769 F.2d at 214.